John Calhoun WELLS, Secretary of the Kentucky Labor Cabinet and Commission of Workplace Standards, Appellant,

v.

KENTUCKY LOCAL CORRECTIONAL FACILITIES CONSTRUCTION AUTHORITY, Gordon C. Duke, Chairman and Individually, Fulton County, Kentucky, and James M. Everett, Judge/Executive, Roy Nethery, Sr., Magistrate, First District, Joe Forest Campbell, Magistrate, Second District, James Black, Magistrate, Third District, Bill Mitchum, Magistrate, Fourth District, Comprising the Fiscal Court of Fulton County, Kentucky, and First National Bank of Louisville, Trustee, Under a Trust Indenture Securing Multi-County Correctional Facilities Revenue Bonds of the Kentucky Local Correctional Facilities Construction Authority, Appellees.

Court of Appeals of Kentucky.

June 5, 1987.

Betty A. Springate, General Counsel, Kenneth J. Costelle, Asst. Counsel, Kentucky Labor Cabinet, Frankfort, for appellant.

William E. Scent, Karen Scent, Scent & Scent, Paducah, for appellee, Kentucky Local Correctional Facilities Const. Authority.

James Paitsel, Fulton Co. Atty., Fulton, for appellees, Members of Fulton Fiscal Court.

James M. Everett, Fulton County Judge/Executive, pro se.

Alan B. Feldbaum, Allison J. Maggiolo, Lynn H. Wangerin, Greenebaum, Young, Treitz & Maggiolo, Louisville, for appellee, First Nat. Bank of Louisville, trustee.

Before HOWARD, LESTER and REYNOLDS, JJ.

LESTER, Judge.

This is an appeal from a declaratory judgment determining that revenue generated by the sale of bonds by the Kentucky Local Correctional Facilities Construction Authority to construct detention facilities are not state funds, thus eliminating the application of the prevailing wage law to the construction contract.

We find it difficult to improve upon the Findings of Fact and Conclusions of Law as set forth by the trial court, so we adopt them as our own, to wit:

## MEMORANDUM OF FACTS

The Kentucky Local Correctional Facilities Construction Authority (the "Authority") filed this Declaratory Judgment action pursuant to Section 418.040 of the Kentucky Revised Statutes as amended ("KRS"), seeking a final and binding declaration of rights that the Fulton County Jail project and all other jail projects similarly funded with proceeds of the bonds (the "projects") are exempt from the prevailing wage rate provisions of KRS Chapter 337 (the "Prevailing Wage Law").

The Secretary of the Kentucky Labor Cabinet and Commissioner of Workplace Standards is required by KRS Chapter 337 to establish and administer a prevailing rate of wages for each locality where physical work on public works is to be performed. Every contract executed between a public authority and the successful bidder or contract for a public work must contain a provision requiring the successful bidder, and all of its subcontractors to pay no less than the established prevailing rate of wages. The term "public works", as defined in KRS 337.010(3)(e), does not include construction conducted by a county "unless such construction is financed with fifty percent (50%) or more of state funds."

KRS 441.625(1) created the Authority to act for the public benefit by providing "an additional and alternative method of constructing, reconstructing, improving or repairing and financing jails and appurtenant facilities for any local government in this state." In addition, KRS 441.625(3), the Authority is authorized to issue revenue bonds, "payable solely from the revenues, rentals, and other funding pledged for their payments" to pay any part of the cost of any jail project which meets the required standards.

The Authority in 1984, issued bonds to aid Fulton County and other local governments in financing the construction, reconstruction, improvements of repair of their jails. Proceeds from the sale of the bonds were deposited in trust accounts at First National Bank of Louisville ("FNB"), such funds to be disbursed to the counties as needed for the projects. There are two types of financial aid to participating counties contemplated under this plan of financing—outright grants and loans. Each participating county will receive a grant. In addition, each county is required to provide a portion of the funds required. Under certain circumstances, a county may borrow all or a portion of its required contribution from the proceeds of these bonds. Approximately one-third (⅓) of the proceeds of the bonds are to be used to make loans to various counties. Each county that borrows money under this project must enter into a "Lease and Participation Agreement" with the Authority and make rental payments thereunder.

The main sources of the repayment of the bonds, the proceeds of which are used to refund the grants and the loan to participating counties, are monies collected for the benefit of the Authority as court costs under KRS 24A.175(6) and rental payments made under the Lease and Participating Agreements. The court costs are deposited in the State Treasury and invested by the Authority until the last business days of April and October when the money is transferred to FNB, the Trustee.

The estimated cost of the Fulton County project located in Hickman, Kentucky, is $606,500. Fulton County's share of the cost of the project is $242,600. Fulton County will contribute the land, which has a $20,000 value, and will borrow the remaining $222,600 from the bond proceeds under a Lease and Participation Agreement. All rental payments thereunder will be made directly to FNB. The balance of the costs, $363,900 will be contributed by the Authority.

The *proceeds of the bonds* are used to finance the projects of various counties, partially through loans. The bulk of the security for the repayment of the bonds are the court costs and the rental payments received from the counties. There is no doubt the court costs and rental

payments for repayment of the bonds are "State Funds". The issue here, however, deals with the proceeds of the Revenue Bonds.

The county, in which the project is located, contracts for the construction of each project. Each county is solely responsible for the acquisition, design, and construction of the project. In addition, each county covenants to complete its project and to pay cost overruns which may occur. (Section 301 and 5.04 of the Lease and Participation Agreement).

### FINDINGS OF FACT

1. The plaintiff instituted this Declaratory Judgment pursuant to KRS 418.-040 for the purpose of obtaining a final and binding declaration of rights.

2. The Fulton County Jail project and all other jail projects similarly funded with the proceeds of a $32,310,000 Kentucky Local Correctional Facilities Construction Authority Multi-County Correctional Facilities Revenue Bonds, Series 1984, dated October of 1984 ("Bonds") issued by the Authority are not subject to the Prevailing Wage Rate Laws, as the same Revenue Bonds are sold to various individuals and organizations and invested, with the proceeds paid directly to the Authority or the Trustee FNB and at no time are these proceeds involved with the Kentucky State Treasury or any state agency. The proceeds from the sale of these bonds were deposited directly in trust accounts at FNB and such funds were to be disbursed only to the counties as needed for the various projects.

3. The Fulton County project consisting of $606,500, except for Fulton's contribution in-kind of the land, are monies used to finance the construction of the project and are derived from the bond proceeds received by FNB upon the sale of the bonds.

4. Fulton County contracted with Adams Construction Company for construction of the jail project for a fixed contract sum $537,828), which did not include any allowance for wage rates of employees of the contractor and/or workmen employed by the contractor's subcontractors. The Authority was not a party to this contract.

5. Prior to bidding the project the contractor contacted the architect for Fulton County and inquired if the Prevailing Wage Laws applied to the project. He was told that it did not apply.

6. If the Prevailing Wage Rate as set by the Secretary is applied to the Fulton County project, the cost will increase from $75,000 to $84,000 over and above the contract sum of $537,828. This cost overrun is the responsibility of Fulton County if the Prevailing Wage Rates are applied to the Fulton County project. It was the opinion of the Executive Director of the Office of Investment and Debt Management in the Finance Cabinet that the Prevailing Wage Laws do not apply to these projects because no state funds were involved and the construction contracts were local contracts.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter of this action. An actual controversy exists with the respect to the plaintiffs' rights under KRS 337.010(3)(e) and the plaintiffs are entitled to a declaration of their rights and duties under this statute.

2. KRS 337.010(3)(e) provides that the Prevailing Wage Law shall not apply to construction conducted by a county government unless such construction is financed with fifty percent (50%) or more of "state funds".

3. The jail construction monies were not derived from any state appropriation or state trust or agency account.

4. All the construction funds used for the Fulton County project were pledged to FNB, as Trustee, pursuant to provisions of Section 501(1) of the Trust Indenture which reads in part as follows:

"There are hereby pledged to the Trustee hereunder for the benefit of all those who may become registered owners of the bonds, for the payment of the principal or redemption price, if

any, and interest on the bonds and the Mandatory Sinking Fund Installments for the retirement thereof, in accordance with their terms and the provisions of the Trust Indenture, subject only to the provisions of the Trust Indenture permitting the application thereof for the purposes and on the terms and conditions set forth in the Trust Indenture, (i) the proceeds of sale of the bonds to the extent not required to be utilized for payment of Notes until expended ...; the pledged Receipts ..."

The Bond proceeds were paid directly to FNB as Trustee and were placed by it in specific accounts pursuant to Article V of the Trust Indenture. They constitute trust funds for the benefit of the bond holders and are subject to the terms and conditions of investment and disbursement specified in the Trust Indenture.

5. "State Funds" are defined in KRS 446.010(31) and apparently do not include these bonds proceeds which have always been trust funds under the control of FNB as Trustee and have not and apparently will not be controlled by the Authority or any State organization. The bond proceeds were never placed or intended to be placed in the State Treasury and have not been held in any way on behalf of the Authority. The proceeds of the sale of the bonds may only be used to pay for the cost of the Fulton County jail project and other jail projects.

6. The Fulton County Jail project is a "public works" construction project conducted by Fulton County and is financed with less than fifty percent (50%) of "state funds".

7. The Fulton County jail project and the other jail projects financed with fifty percent (50%) or more of the proceeds of the bonds are exempt from the application of the Prevailing Wage Rates as set forth in KRS 337.010, et seq.

8. The plaintiffs are entitled to an injunction permanently restraining the Secretary/Commissioner from taking any action to enforce the Prevailing Wage Statutes against the Fulton County Jail project or any other local jail

project financed from the proceeds of the bonds.

9. It is not necessary to determine the constitutional issues raised in the plaintiffs' Amended Complaint as a result of the Findings of this court.

10. A Declaratory Judgment may be entered upon the foregoing Findings and Conclusions declaring that the bond proceeds used to fund the construction of the Fulton County Jail project and other local jail projects within the Commonwealth under similar circumstances are not utilizing "state funds" within the meaning of KRS 337.010(3)(e) and permanently enjoining the Secretary/Commissioner from taking any steps to enforce Prevailing Wage Statutes against the Fulton County jail project or any other similar type jail projects.

■ In addition, we see no merit to the appellant's argument that since the Legislature authorized an authority to issue bonds to generate funds for a local purpose that those monies automatically become state funds. This is a non sequitur for if the General Assembly wanted the proceeds to be deemed state funds, they would have so provided. Moreover, we agree with the position of the Arizona Court that even if funds might be deposited in the state treasury, that does not necessarily vest the state with title thereto. *Navajo Tribe v. Arizona Department of Administration,* 111 Ariz. 279, 528 P.2d 623 (1974). Uniquely enough, Dr. James Ramsey, Executive Director of the Kentucky Office for Investment and Debt Management in the Finance and Administration Cabinet, agreed with the position of the appellees stating that these funds involved were non-appropriated (not paid out of the General Fund) bond issues and therefore, not state funds. We are further impressed with the fact that the 1982 General Assembly excluded from its definition of "Public Works" county construction projects unless 50% or more is financed with state funds. The trial court was correct.

■ We will briefly touch upon appellees' argument that the prevailing wage

law is unconstitutional. We say briefly because having reached the conclusion that the law is inapplicable to the Fulton County project, then the constitutionality becomes of no concern. In the second place, the appellees failed to preserve the issue by compliance with CR 76.14(6). In any event, the Legislature is free to make reasonable classifications, *Kentucky Milk Marketing & Anti Monopoly Commission v. The Borden Company*, Ky., 456 S.W.2d 831 (1970), so long as they are based upon reasonable and natural distinctions. *Graham v. Mills*, Ky., 694 S.W.2d 698 (1985). It is the responsibility of the courts to draw all reasonable inferences and implications from legislative acts as a whole, and, if possible, sustain the validity thereof. *Budget Marketing, Inc. v. Commonwealth, ex rel Stephens*, Ky., 587 S.W.2d 245 (1979). We are not prepared to declare the prevailing wage law unconstitutional upon the arguments advanced by appellees.

The judgment is affirmed.

All concur.